May it please the court, I'm Gary Garfinkel, counsel for Robert Pack, the plaintiff. I would like to reserve some time for rebuttal, I'm not sure how much at this point. This case, of course, is a summary judgment, for which the court exercises its de novo review. The case actually was a very straightforward matter of the court's discretion, misrepresentations, nondisclosure, concealment, involving a single category of misrepresentations. The plaintiff was led to invest $1.5 million, based upon a representation that was repeated over a course of many months, that as to the amount of misrepresentations, the plaintiff was able to cover. The only thing that is not mentioned in the review is the amount of the network costs per active subscriber. Of course, what's important here, as being summary judgment, is what was alleged in the complaint. Now, what was alleged in the complaint with regard to that? And there was two complaints, I understand, it's the third amended complaint, it's the operative complaint, is that correct? Third amended complaint is the operative complaint, which is to be seen in the context of also a request to further amend the complaint. I researched that. You put it in a footnote in your opposition to the motion to dismiss, and preceding that, there was a whole delineation of certain things that were in depositions that were taken in October prior to the motion to dismiss. You file an opposition to the motion to dismiss, you footnote that you might amend to allege a California corporation's code violation, and then you say accordingly you'll move to amend the complaint to conform to proof. What does that mean? Does the judge have to go through all those depositions and sort through all the allegations you made in your opposition? There was no formal motion, however there was a request to amend, and the court treated it as a motion. The district court addressed it on the merits. The district court treated it as a motion to amend and stated reasons why it was denying it. And that's why you need to help me. It seems to me what the judge had in front of him was about five pages of your dissertation, which was in the depositions that were taken back in August of 2003 and September. And you went through a bunch of allegations, but you never came to any conclusions other than the fact that you're going to amend the complaint to conform to the proof. What is the judge supposed to do with that? Well, the judge could have, I suppose, required a formal motion, but the judge elected in the exercise of his discretion, the judge elected to treat the request as a motion. Did you say, hey, gee whiz, this is not my motion? I have not been able yet, I have not yet itemized what I want to add. First, I trust you're aware that I'm just the appellate attorney. I was not the trial attorney. So when you say you, we're talking about a trial attorney who's no longer in the case. You've inherited the wins. I understand. I understand. I'm not ducking the responsibility. I just want to I guess my question is, is that I understand what's in I've read through what you alleged to the judge. And he said, OK, if you want to give me this, but there's no specificity. In other words, you haven't tied it down yet. Where did he abuse his discretion in denying you the motion to amend? Well, the the reasons that the judge stated were refuted in the motion for reconsideration. And the judge then retreated from those reasons. The judge initially denied leave to amend on based upon a view that there was undue delay, that there was bad faith and prejudice. That was refuted in the motion for reconsideration. There was no undue delay or bad faith because the reason that the 1999 misrepresentations were not realleged in the operative third I mean, the complaint was because the judge had issued an order dismissing on a motion to dismiss. The judge had ordered that they not reallege those misrepresentations absent evidence or absent a showing a detailed showing that the 1999 misrepresentations were false and attributable to Stevens. What's wrong with that? What's wrong with that order? Well, that's that's fine. We're not we're not contesting that order. What happened is in the 2003 discovery, they developed that evidence. And where have you listed that? Oh, that's that's in our brief. I believe it's pages 14 to 16. What specifically are the allegations that you then would have included in the amended complaint? Well, the in the discovery, it was shown that the original misrepresentation, the original misrepresentation was that the original misrepresentation that the costs were $1.50 per active subscriber were false and known to be false. They were merely a sales pitch, and that the three defendants, the CEO, the CFO and the leading Mr. Stevens, the primary investor and director, they knew or should have known that they were true. And did you list these? In our brief, yes. As I said, I believe it's To the district court. Yes. That was in the motion for reconsideration. And because of that, the judge then retreated from his original bad faith analysis. And he said he he instead adopted this his his view of this waiver rule. This notion that if you don't reallege allegations in an amended complaint, you waive them. Well, as your honor. Yeah, not right. So so that then became his rationale. The point I'm trying to make, Judge Brunetti, the court, is that the original reasons that were stated for not allowing the amendment, bad faith, undue delay, those were those were responded to. And and the judge retreated from them and instead relied upon the the waiver rule, which I I'd be happy to argue that that's just not true. It's just an inapplicable rule doesn't apply here. But let me pursue one of the question of possible delay, as I understand that it was in the summer of of 2003 that the depositions were taken that you cite in your brief as evidence of the knowing falsity of the representation about the price per subscriber per month. And then this file battle bruise in the summer or early or late spring, I guess, of 2004. It's like six to eight months later. When is it? Is it sooner than that? Their motion for summary judgment was immediately after the declarations, I believe, was filed is either. I believe the depositions were went into late September and the opposition was filed in early to mid-October. October 16th. Oh, three. That's right. I'm working on a second order. Yeah. Right. So there really was very little time to do a motion for to amend at that point. It was the the plaintiff was put in a very difficult procedural situation. And that's why I assume I think it's fair to assume that that's why there was no formal motion to to amend. Well, there certainly would have been if this was filed on October 16th, 2003. The memo in opposition to that wasn't filed till January 16th. So for you could have filed them, you could have filed an amended complaint. In the meantime, you didn't. And the most you did is you footnoted the fact that you might allege a cause of action, the California code, or that you were going to conform your your complaint to the proof. I'm sorry, Your Honor. Did you say the motion to dismiss was the motion to dismiss is a different matter. That was earlier. The motion for summary judgment was filed on excuse me, on October 16th, 2003. Yes. Your opposition to that motion was filed on January 16th, 2004. Okay. That's three months. Okay. And and I think arguably there was arguably the trial counsel had had time to file a formal motion. But again, I'm back to the same point. But the district judge has discretion. And that discretion he exercised in favor of considering the request to amend. He did not he did not deny he did not say there was no motion in front of him. He dealt with the request to amend as if it was a motion. So I think it's not appropriate for this court to to deny the or affirm the judgment based upon a discretionary on what the judge could have done in the exercise of his discretion, but he didn't. He perhaps could have said I'm not going to consider I'm not going to consider the request to amend. Are you saying that your your your motion for reconsideration has everything in it that shows that the judge abused his discretion? Well, nothing comes to mind at the moment beyond that. I don't because I want to read this discretion in terms of the original ruling. Is that what you mean? I'm talking about the ruling to to fail to allow you to amend. OK, there were two aspects of that ruling. The motion for reconsideration addressed his original ruling, which was that there was bad faith and undue delay and prejudice. Now, the motion for reconsideration did address that. But the problem was that then the judge retreated from that. If he makes an error of law, is that an abuse of discretion? You can characterize it as an abuse of discretion. Sure, sure. Yes. He retreated from the bad faith. Undue delay. Because he said in his his order that he found sufficient evidence of bad faith suggests leave to men shouldn't be granted in the first order. In the revised order, the order on reconsideration, he retreated from that. Well, then I kind of go back to my first question because the first order is in May of 2004. By that time, it's nine months after in the order I was reading from that I asked my first question, May of 2004. That's nine months after the depositions where you learn the evidence. At that time, he's disposing of the motion for leave to amend or or the suggested motion. His initial ruling. Yes. Well, that's that's a long time. I mean, this really goes back to Judge Vernetti's question. When is it you put in front of the court a request for leave to amend? Well, in the opposition, he did. There was no formal motion. He did it in the opposition. The judge then. No, he just said you were going to conform. You're going to amend your complaint to conform to the proof, whatever that means. And then you said you might file an amendment to plead a California code violation. And so preceding that statement that you would conform that you would amend the complaint to conform to the proof, there was about seven or eight pages of various pieces of depositions that you that you specify. Yes, that's it. But OK, I don't know why I'm not getting through on this. Let me let me try to say it a little bit differently. The judge, perhaps in the exercise of his discretion, he could have said there's no formal motion in front of me, so I'm not going to consider whether to amend. But he didn't. In the exercise of his discretion, he considered the request to amend. He treated it as if it was a motion. So we. That's not a problem. We can concede that the point is, what did you what did you proffer to him to make a decision on? That's the whole point. What what are you going to stand on? Whether you made a formal motion or not, that there was a request before the judge to not grant summary judgment, be or or to if he's if he's gone, it should be with leave to further amend. I mean, that that happens frequently when when in some in opposition to summary judgment, it's it's common and frequent for parties to say if you're going to grant if you're inclined to grant summary judgment, allow us to amend, allow us to amend. And it's common for a judge to order summary judgment subject to leave to amend. And that's essentially what we're talking about. So common motion to dismiss. Yes. Motion for summary judgment after the discovery cut off. Now, in this case, frankly, the private securities litigation reform act. Creates problems because it means the plaintiff can't make allegations that might be made in other circumstances. And so I understand the problem that your predecessor counsel was dealing with. But frankly, I don't recall seeing that many summary judgments at the end of discovery when the judge says to the party, but you can go back and try a new theory by amending at that stage. Well, I am more familiar with state procedure. And I can say with absolute certainty that it is a common occurrence in state procedure. Whether it's different in federal, I don't have enough federal practice to be able to answer that with the same degree of confidence. But the point is, however characterized, the judge did consider the request for leave to amend on the merits. And it would be in my, I respectfully submit it would not be appropriate to affirm the judgment based on a discretionary, what he could have done in the exercise of discretion. The question is, he considered your motion, but did he abuse his discretion for failure to grant the motion to amend? Well, I would say abuse his discretion by granting summary judgment without leave to amend. Did he abuse his discretion by refusing leave to amend arguably on an error of law? Yes. Absolutely. Absolutely. Because he retreated from the bad faith and undue delay. And he went on the waiver. And he went on the waiver. And that absolutely is. That could be an appellate rule rather than a district court rule. That's an error. That's absolute error. That's an abuse of discretion. Yes. And that's what the judge ruled on. And that's what I submit the Court should focus on. And that's only as to the 1999 misrepresentations. Even if you were to say they can't reallege that those statements were false when made, we still have the continuing duty to disclose when the knowledge that it was untrue was established. And through, you know, from at a minimum early February on, they knew that it was not $1.50 per active subscriber. They knew that. And they didn't disclose that. We have that argument for your brief. And we do have you well over time. Since we took you there, we'll still give you some time for rebuttal. Let's hear from the defendant. Thank you. Is the Court? Nina Locker from Wilson, Sonsini, Griffith, and Rosati here on behalf of appellee Mr. Stevens. I'd like to first address a theme that has permeated this case from the start. I think it will set the context in which to discuss the issue of leave to amend. It actually permeates all of the issues on this appeal. But I will get to the leave to amend issue and address each of the points that counsel made. There's a theme in this case, and that is appellant's shameless propensity to change his story, to change his position each time it serves his interests. After presiding over this case for four years, we believe that the district court, Judge Walker, came to the same conclusion. His opinions that are the subject of appeal in this case are replete with references to appellant's bad faith, undue delay, inconsistent testimony and statements, and changing positions. Indeed, in his motion for summary judgment granting that motion, he took the extraordinary step of issuing an order to show cause why appellant should not be subject to Rule 11 sanctions. And this theme underlies many of the issues on appeal. It underlies the district court's granting of summary judgment in the first place, based on appellant's disavowal of the allegations asserted in the operative complaint. It underlies the district court's application of the Lockheed Martin factors, bad faith, undue delay and prejudice. It underlies the district court's ruling on judicial estoppel, on the motion for reconsideration, that appellant could not change his position yet again. It even underlies... Did appellant ever say anything other than that he thought representations had been made to him in 1999 with regard to the network cost per subscriber per month? I mean, that's even in the third amended complaint. Your Honor... No, the operative misrepresentations identified in that complaint are limited to January and February of 2000. Even appellant admits and concedes, he's said it to this court in his briefs, that he omitted the 1999 claims from the operative complaint. The district court told him not to put them in until he could back them up. Is that correct? No. That's not correct, Your Honor. What the district court did on the order dismissing the first amended complaint was to say that the claims with respect to 1999 did not meet either 9B or the PSLRA heightened standard, invited appellant to reallege, told appellant what he had to do to reallege, to meet the specific... That's not what I just said. Well, he didn't say... Not to put them in unless he could back them up. Unless he could back it up. He did not say until you can back it up, because then what happened, and Judge Roth, with all due respect, I'm going to go right now into then the leave to amend. So let me address, let me put this in context before I address waiver and the Lockheed Martin factors. On the motion for summary judgment, appellant clearly stated, one, I disavow my 2000... I'm still waiting for an answer to Judge Roth's question, which was, because as I read your brief, your brief says exactly what she said, which is that the reason the third amended complaint didn't identify as an actionable misrepresentation was that the previous order of the district court said don't allege that unless you have evidence that backs up the falsity of that known to be false at the time. And so the third amended complaint actually does allege misrepresentations in 1999 in the earlier part of the complaint, but when it gets down to the identified false statements, it's limited to 2000. Correct. Most sides are saying the same thing with regard to why it was that the third amended complaint pulls back on the 1999 allegations. Absolutely. And the ninth, there's no dispute that the 1999 allegations were not part of the claim in the third amended complaint. But they weren't something that was taken off the table and disavowed by the plaintiff. The plaintiff always thought there were such representations that just at the time of pleading, the plaintiff didn't have any evidence to support the falsity. Correct. But the plaintiff did waive those claims. And the rule in the ninth circuit does apply at the district court. No, it doesn't. No, it doesn't. I can just tell you now, that's not going to fly. Third circuit at the district court level either. Because if that were true, you're telling me as soon as the district court told the plaintiff don't plead it unless you can prove it, then plaintiff is locked in his allegations to what he can prove at the time of pleading. And we know that's not the case. Well, in the Garcia case and in the King case, as well as the Google case, the court's clearly, I mean, it's applied in King to the district court level. It's applied in Garcia to the district court level. And at least the district courts, such as the Google case, clearly understands the pleading, the waiver rule to apply at the district court level. And what the court understood and defendants understood by the omission of those claims in the Third Amendment complaint is that they had been taken off the table. Why? That makes no sense. Well, what appellant should have done is just as Judge Roth discussed in the Atkinson. In Atkinson, if Atkinson had moved in the district court to amend his complaint, that would have had nothing to do with my decision on the court of appeals. But once he came up to the court of appeals without having amended his complaint, we said you've waived it. But that did not mean at the district court level he could not amend his complaint. I think the law in the Ninth Circuit is actually different. But what appellant could have done, and then I want to get to Lockheed Martin, the Lockheed factors, is just as Your Honor said in the Atkinson case, said I'm preserving these claims. I put you on notice that I intend to amend should there be evidence developed. But appellant did not do that. He simply did not include them. And he kept his intent to omit the claims and then to amend later on. The complaint includes a statement saying from September 1999 to December 1999, Free Eye, or however you pronounce it, its executive officer, its chief financial officer, and its principal shareholder director represented the plaintiff and others that Free Eye's then current network costs were $150 per subscriber per month. Now, there would be no reason to include that as part of the factual recitation unless there was an intent, if they could prove the necessary falsity, to put that on the table as a claim. Why else would it be there? Judge, even appellant doesn't claim that that was a notice either to the court or to the parties of an intent to preserve and then to amend upon proof. That is not stated in the complaint. There was no notice provided. I just read it from the complaint. That is stated from the complaint. That's a quote from the Third Amendment. Yes, but that doesn't say we are preserving these claims. Let me, though, give the court different grounds. Frankly, I find it difficult to think that because the district court tells a plaintiff, don't include it in the complaint unless you can prove it now, that the defendant can safely think we've won forever on that issue because if they can't prove it now, they'll never be allowed to prove it again. I don't think so. Your Honor, may I spend my remaining time talking about and clarifying the record with respect to the district court's application of the Lockheed Martin factors because the judge did not retreat from his analysis of Lockheed Martin. What the judge said by applying the waiver rule is I don't need to go back to the issue of bad faith, undue delay, and prejudice. This is an alternative ground. I'm going to apply waiver with respect to the request to amend. He did not retreat from his finding. And so that is an alternative ground that I would urge the court to affirm on that basis, and now let me explain why. The district court did properly conclude that appellant had engaged in bad faith and had unduly delayed and that reopening the case and reopening discovery would prejudice the appellee. With respect to the issue of bad faith, in requesting, and all requests, by the way, with respect to the 1999 allegations, was in the opposition to the motion for summary judgment. They were laid out. And what appellant represented to the district court was that he had omitted the 1999 allegations inadvertently, by mistake, that the dates in the complaint, the 2000 dates in the complaint, were incorrectly stated. He believed that would achieve or be able to allow him to obtain leave to amend. That's right there at ER 105. And I'm looking at it, and I see the phrase incorrectly stated. I'm not sure I see everything else you attribute to that statement. Okay. What appellee says is the claims are based on statements made at board meetings November and December of 1999. Defendants accurately point out the dates of those board meetings are incorrectly stated in the third amendment complaint. Correct. What he's saying is, because if you read the rest of his opposition, PAC does not recall what was said in 2000. And now he's representing to the court the dates in the complaint were a mistake. They were really intended to be 1999. Since they're incorrectly stated, he doesn't say here, gee, I just remembered the wrong months. I put them down. I mean, I really don't see how his story has changed. His story has been that all through this time, starting in 1999 and continuing to 2000, he was led to believe that the network costs per subscriber per month were $1.50, and they were higher. Where has he ever disavowed that statement? He has not disavowed the 1999 allegations. He did disavow the 2000 allegations. But this was interpreted by all in the district court to say the reference to 2000 as opposed to 1999 was inadvertent. And the district court found that not to be a legitimate implication. That's number one on the issue of dates. I don't see the word inadvertent. I see the word incorrect. But I think that's different. Sure, they are wrong because he can't come up with the proof he needs to make the point in 2000. But he's never said anything other than the fact that they were wrong in 1999. The dates of the board meetings are incorrectly stated in the third amended complaint. To me, and to the district court, that meant that instead of 2000, they should have been 1999. But now let me talk about the undue delay in the request for leave. Because the reason you give for not saying 1999 is the same reason the plaintiff gives. At the time of filing the third amended complaint, they didn't have the proof that Judge Walker required or the falsity. That's right. And I believe, and so did the judge, that that's not what the appellant was meaning to say here. He said it later, but not in seeking leave to amend. But let me turn to the issue of undue delay. Before you go away from that, do you put any stock in what was said in the motion for reconsideration?  I don't know. Sorry, Your Honor. I don't want to put words in counsel's mouth, but he relied on the motion for reconsideration relative to this issue about whether or not he properly made a case for amendment. The, well, the motion for reconsideration should not have been considered in the first place because there was, it didn't meet the requirements. There was no new evidence. Okay. It was considered. Okay. So now, what's in the motion? Does the motion for reconsideration show that the plaintiff made a case to be able to amend this complaint? That is, and I want to make sure, Judge Bernieri, I'm answering your question. I don't know what was in the opposition to the motion to dismiss. Yes. I mean, the motion for summary judgment. Yes. After that time, there were several things, including the last motion for reconsideration, which we discussed with counsel. So how do you, what's your position on what was done on the motion for reconsideration? With respect to the leave to amend issue, to add the 1999 claims? Sure. There was, with respect to adding the 1999 claims, there was nothing added in the motion for reconsideration with respect to the 1999 claims that really wasn't in the opposition to motion for summary judgment. And if you're asking, do I think that the plaintiff could have alleged 1999 claims, the answer is yes. Could he have alleged them? And he should have done that back when the second amended complaint was filed, not when a dispositive motion was filed. But I'm answering you honestly that, yes, he could have alleged a 1999 claim, at least with respect to the evidence proffered. It should have been done years before. And I'd like to at least spend one moment addressing that, because Judge Walker was quite concerned about that, too. The lawsuit here was filed in 2001. The order on the first amended complaint was issued in September of 2002. Appellant says that he was a temporary omission. The 99 claims, it was a temporary omission until he developed evidence. But he did nothing to develop evidence. And I'd ask the Court to look at one very significant document, ER 219 to 222, very significant document. Because in that motion for reconsideration ‑‑ What is it? Oh, I'm sorry. That is a declaration by Stephen Borg, the former CTO, chief technology officer of Free Eye. It's dated October 2002, the very same month that the second amended complaint was filed. Why is that significant? It's significant because on the motion for reconsideration, what appellant said is, the evidence I have of falsity, 1999 claims, came from Mr. Borg. And let me give the cite to that, if I may. That is ER 70, paragraph 9. That is Mr. Pack's affidavit on the motion for reconsideration. And ER 103, which is the actual brief on ‑‑ I think it's the brief on the motion for reconsideration. So what appellant said is, I obtained the evidence of falsity of the 99 allegations, or misrepresentations, excuse me, from Mr. Borg. But he had spoken to and actually obtained a declaration from Mr. Borg in October of 2002, 15 months before he moved to amend. At the same ‑‑ the same month he filed the second amended complaint and before he filed his third amended complaint, and then did nothing during discovery, did not notice Mr. Borg's deposition, discovery ‑‑ appellee did, discovery closes, and appellee files a motion for summary judgment, and we still wait four more months until a request and a footnote is made for leave to amend. And certainly, had discovery been opened, the whole litigation would have had to recommence in terms of discovery, deposition, and interrogatories, documents, et cetera. And I would submit that that certainly constitutes undue delay, prejudice, and with all due respect, Your Honor, I actually disagree on the issue of bad faith. Even in spite of that, then, you're saying even if the motion for reconsideration of declarations that were filed by PAC at that time, it was too late, forget about it. It was too late. Even if there may be something in that motion of reconsideration that shows that there's evidence that he can prove that his basis was in the 1999 claims. That evidence existed in October of 2002, before discovery even commenced. He had access to it, he had reached out, and he sat on it, because that declaration was, of course, not submitted to the court until the motion for reconsideration. And that October 2002 declaration by Mr. Bork doesn't appear until years later in that motion for reconsideration. So the parties went through all of discovery on the basis that the 1999 claims were not part of the case, and on the eve of dismissal, actually after the eve of dismissal, had come and gone, appellant requests leave to amend. And again, with all due respect, I actually don't interpret the first part of the motion. I don't interpret the phrase about the dates being stated the same way as the court does, and Judge Walker obviously did not either. Not when you read the entire context. What prompted the statement in the court's order disposing of what must have been the First Amendment complaint, warning plaintiffs not to make allegations unless they had evidence that would support the falsity or the known falsity? Was that something raised in your motion to dismiss the First Amendment complaint? If I understand your question, Your Honor, we did raise pleading deficiencies. I mean, we didn't say do not amend. We made a motion to dismiss on lack of particularity on 9B for the state court claims and the PSLRA heightened standards for the securities claim. Well, it's the second part that makes me wonder, because, I mean, I'm not offering a view with regard to the statute. For what it's worth, I happen to think it was a good thing. But one of the things that the Private Securities Litigation Act did is properly or should have made plaintiffs a little cautious in making allegations unless they could point to something that would back up the allegations. But it's not meant to mean the discovery process is curtailed or the litigation can't proceed properly to cover those allegations if and when the proof is developed. And so having put that statute on the table and alerted the district court to it, not that Judge Walker wouldn't have known about it otherwise, it does make me wonder, well, the ripples of that are sort of what we see here, which is that a complaint is a complaint. And a complaint can't include everything that a complaint in another context or at an earlier day would have, or indeed the earlier complaint here did, because they didn't yet have evidence or argue that they didn't have evidence. Frankly, and maybe this is one way to get to it, I'm not sure I understand the bad faith, because I don't see what plaintiffs have to gain by pulling back on the 1999 allegations unless their problem was that they didn't have evidence they thought they needed at that time. But that's not to mean that those 1999 allegations are excluded from the litigation if the proof is developed. Two points of note. One is the issue that Your Honor raises is actually the same issue under 9b, because in fact Judge Walker applied 9b to the common law claims. And those were dismissed, the 1999 claims were dismissed again on 9b. So the issue Your Honor raises is the same. I think the difference is the proof part. I mean, 9b, and I've gone through that exercise, and I used to wave 9b around a lot, you could require a specific identification of what was false. But they probably could have done that based on what they thought had happened. What they couldn't do was point to something that demonstrated the knowing falsity by the defendants. I understand that. And on the issue of bad faith, let me just make one last comment, which is, you know, I'm not sure I understand the bad faith. The bad faith that the judge pointed to was not only with respect to the request to amend 99 and the way he interpreted, as we shared that interpretation of the complaint, but it was with respect to the 2000 allegations. This case proceeded on the basis of the third amended complaint, on the basis of two allegations that misrepresentations were made in 2000, one in the January 2000 board meeting, one in the February 2000 board meeting, and one in the January 2000 board meeting. And we now know that during discovery, those allegations were disavowed in deposition testimony, in interrogatory responses. And I can provide the court with sites. Most significantly, in opposing the motion for summary judgment, appellants said two things. One, I don't recall whether any statements I believe were false were made at that time. And two, I don't recall whether any statements I believe were false were made at those two meetings. What I recall being pointed to is testimony with regard to I don't recall oral statements as to network costs during those meetings. No, Your Honor. May I give you a site to the court? At ER 95, lines 13 to 14, that's the brief in opposition to the motion for summary judgment. And I'll quote. Appellant says, I do not recall if costs per subscriber were discussed at the board meetings in January or February 2000. This is one simple example, and I could give the court 100, that everyone until that motion for reconsideration understood the phrase network costs and network costs per active subscriber or costs per subscriber as being synonymous. This apples and oranges argument came up on the motion for reconsideration, because appellant didn't want to get sanctioned. And I'm happy to make a supplemental submission with at least 100, I promise, 100 quotes on that. But he clearly interpreted his own testimony to say, I don't recall if there are any false statements about network costs, network costs per subscriber at these meetings. And then in his opposition at ER 105, appellant said, I'm going to seek leave to amend because my claims are based on the 1999 claims, not the 2000 claims. He abandoned, he disavowed the 2000 claims. And so Judge Walker said this whole case has proceeded based on these allegations of misrepresentations in 2000. And you've now said in your deposition, you've now said in your interrogatory responses, and in fact, Judge Clifton, the interrogatory responses very interestingly say that appellant was unable to identify any statement regarding any topic, not network costs, not network costs for a subscriber, any topic at either board meeting that appellant alleged was false. And the site for that, Your Honor, is ER 247, any topic. So Judge Walker is sitting there after four years saying, I have a plaintiff who proceeded in the case based on allegations of misrepresentations in 2000. Now on the eve of dismissal, actually, forgive me, after the eve of dismissal, right, on the motion for reconsideration, but on the eve of dismissal, he's saying, I disavow that. We are way over time, but I'll listen. No, wait a minute. No, no. But this, this discussion now really caused me another big problem. If these allegations were made to third parties or to the public or to something that the plaintiff would have to go find, I think what his causes of action are, and catch me if I'm wrong, are what he was represented, what was represented to him. So it's his knowledge. Now, he might not know about the scienter, but as far as allegations, I think he's making, from what Judge Walker might have said or what you're saying, everything in the complaint is what was presented to him. He was standing there getting the representation. So he might not be able to say maybe what the scienter was, but he should be able to say what he was told and why he's saying, oops, there's a problem. Is that the problem? Is it that here's the person who received the allegations, injured me, can't say what they are? Well, yes, the allegations in the third amendment complaint with respect to Mr. Stevens, there were two other individual defendants. Not who made the allegations, who received them, the complaint, I received them. Appellant. Appellant said they were made to me. But he can't identify with specificity when. Forget about the scienter. Well, he specified in his complaint they were made at the January board meeting, the February board meeting. Well, those have been thrown out because he disavowed them. Okay, well, he disavowed those. In 1999, he wasn't able to allege the misrepresentations, the falsity or the scienter. But he does put a declaration in the reconsideration relative to 1999. He does with respect to evidence that was easily obtained in October of 2000. So those representations then, the alleges in the recon are just too late. Correct, Your Honor. Okay. Thank you very much for your patience. How is it that the, if that's correct, how is it that the plaintiff can recollect specificity he needs on the 1999 declarations made to him, or statements made to him? He can remember them on the recon, but he can't remember them originally. See, Your Honor, that's a misconception as to what was said in the depositions and the interrogatory responses. What was said in the deposition was he did not recall discussions of network costs at the meetings. What was said in the interrogatory response was he did not, could not specify oral statements. What we have is a consistent pattern of representing that the amount of the network costs. We have a sentence in the opposition, it was just read. Pack does not recall almost three years later if costs per subscriber were discussed at the board meetings in January or February 2000. And with regard to that statement, the operative word is discussed. What we have is a consistent representation that the amount of network costs per subscriber was $1.50. There was no reason for the network costs to be discussed. That misrepresentation was in the PowerPoints. That misrepresentation was the given that was started in September 1999 and was reiterated in the PowerPoints ever since. There was no need for an express discussion in the 2000 board meetings. Why, you're giving us evidence now, why wasn't that in the complaint, or if it's in the complaint, why isn't that sufficient? If it's in the PowerPoints, what's the problem? Well, because that's not a discussion and that's not an oral statement. Don't say these are false statements unless you can prove they're false statements. Right. Right. Then it's not until later that he could, when he had the quotes, well, those were, you know, those were figures we pulled out of the air. As to the 1999 statements. Why couldn't he have done that sooner? You, why couldn't he have done the 1999 ones sooner? Well, the fact, the demonstration of the 1999 statements were a cost per subscriber. You say are false based on the statements that, well, by the people who were making them that, well, we just pulled these numbers out of the air, they were just selling points we didn't really know. Why couldn't he have demonstrated that falsity at an earlier point? You, earlier you asked me where we cite the evidence that was developed in the discovery, and I said pages 14 to 16 of our brief. It's actually 12 to 14 of our brief. The 14 to 16 was the motion for reconsideration. In that evidence that we set forth at pages 12 to 14 of our brief, we show the depositions of several people which demonstrated that there was never a $1.50 per active subscriber. The, the, why couldn't it have been developed before? Well, it's just, that's when the discovery was. The discovery was in August and September of 2003. Well, what about the board? That's, that's one statement. That, that, that, you know, they got the board statement shortly after the motion, the dismissal order, and then they set up the discovery and got the rest of it. I think counsel, it's a proper exercise of counsel's discretion not to run and amend the complaint as soon as he gets the first piece of supporting evidence. He developed it in discovery in a, in a more organized and, and, you know, consistent manner. He, he, he built the case, and then, you know, they were ready to do it, but the motion for summary judgment, you know, came on first. You mean, are you saying that at the time that the motion for summary judgment was heard, that he had everything, but he hadn't been able to put it in an acceptable form? Well, I don't know why he didn't do a motion. It might be important because the issue is delay. I mean, if you've got it all there, and you've got a hearing that's in, in April or May of the next year, he didn't ask for extended time, he didn't ask for anything. He just goes into the thing and says, well, I'm going to file something. Well, we're, we're back to what we were saying in the, in the direct argument, and I would be repeating myself. Yeah, I know. There are. This thing does go circular if you keep at it. And I, and I do want to, to make the point that apart from the 1999 misrepresentations, the, the ones in 2000, at the very most, those are credibility issues. The question whether he disavowed those representations, that's really a question of whether his explanation is, is accepted or not. And, and Your Honor, I'd be happy to, to argue as long as you want. I believe I can make a very compelling case that, that he never disavowed the misrepresentations in 2000. He was consistent that the amount of the network costs was always misrepresented, first at $1.50 and then as a blended $2.40. And he based his, his investment, his $1.5 million investment on that misrepresentation. He never disavowed it. The most he, they have taken a reference to discussions as, as meaning that nothing was said at all. And that's, that's not right. You don't have to have a discussion of network costs, which is matters of engineering, technology, things like that. Why are the network costs what they are? You don't have to have that discussion. What you have is a representation that the amount of the network cost was $1.50. He never disavowed that. And, and the, the interrogatories, he said he didn't recall a, a specific oral statement. Well, in, in those particular board meetings. That doesn't mean there was never an oral statement. There was never a nondisclosure or a concealment. It, it just means that at those board meetings, there was, you know, the PowerPoint. The, the same basic misrepresentation that began in 19, in September 1999 was never corrected. And was reiterated in the PowerPoints and in, in every other communication, regardless of whether there was a specific discussion of the, of what goes into the network costs. So what, what you really have, except for the, the two legal, the two legal grounds that, that Judge Walker asserted. The waiver, which I think from the court's response to that, I think we don't need to address that anymore. And judicial estoppel. I, I trust it's not necessary to go into an argument as to why judicial estoppel simply doesn't apply here. When you take those two legal grounds away, what you have is credibility. Do you believe Robert Pack, or do you not believe Robert Pack? Does the fact that he said certain things which, which clever attorneys then twist and characterize as a disavowal, do you, who do you believe? Do you believe him, or do you believe their characterizations of what he said? And that's what juries are for. And that's what summary judgment is inappropriate for. And I would just leave you with, but you'll, I don't even have to say it, but I'll say it. He's entitled to his day in court on, as to whether he's telling the truth or not. Thank you. Give us the citations. Thank you. I, I would ask that the court just look at ER 219, which is Mr. Borg's declaration. And I would ask the court that with respect to the issue of the argument that was raised, that network costs and network costs are per subscriber, is apples and oranges. That was not raised. This sounds more like an argument than a citation. That was not raised in the opposition to the motion for summary judgment, but was raised on the motion for reconsideration, to look at the third amended complaint, which is ER, sorry, ER 252. Paragraphs 22, 25, 27, and 29. I would say what it says, but I'm worried about being accused of argument where it says that the allegation is that the network costs were misrepresented and that they were higher than they were represented. And ask the court to look at ER 179 and 188 to 89. And on those pages of Mr. Pack's deposition, Mr. Pack clearly responds to questions with respect to the individual, other individual defendants. Question, did you have discussions regarding network costs? Yes. And then goes on to explain all the discussions he had with the individuals in those private meetings in response to questions. We'll read it. Thank you very much. Thank both counsel for the argument. The case is submitted for decision. And we'll now move to the next case in this morning's calendar, Ultimate Creations v. McMahon.
judges: Brunetti, Clifton, Roth